### IN THE

# SUPREME COURT OF ALABAMA.

CASES DETERMINED AT THE TERM OF THE FIRST MON-
DAY IN JANUARY, 1830, AT TUSCALOOSA.

## PRESENT AT THIS TERM,

### CHIEF JUSTICE LIPSCOMB,
JUDGES SAFFOLD, CRENSHAW, TAYLOR, WHITE, COLLIER AND PERRY.

## BRANDON v. SNOWS AND CUNNINGHAM.

1. Between third persons, the presumption is that public officers have done their duty. Therefore a purchaser of personal property at sheriff's sale, need not prove that the sale was duly advertised, nor that it was regular. It devolves on the opposite party to show its illegality.
2. As to real estate, would such proof be necessary, *quaere?*
3. A sheriff may amend his return on an execution at any time, to make it true; and such return will relate back and protect a purchaser as if originally made.
4. The possession of property remaining with the vendor, is not *per se* fraudulent, particularly when sold at sheriff's sale.
5. The Court may lawfully sum up the evidence to the jury, and instruct them hypothetically.

THIS was a trial of the right of property in a slave, in Tuscaloosa Circuit Court. L. Brandon had recovered a judgment in said Court, against J. Wyzer; an execution issued on this judgment the 18th of April 1826, was levied on the 23d September 1826, on a negro boy named Jacob, then in the possession of Wyzer. Snows and Cunningham claimed the slave as their property; under the statute they filed their affidavit and claim, on the 2d of October 1826, and a trial of the issue joined between

JANUARY 1830.

Brandon
v.
Snows and
Cunningham.

Brandon the plaintiff in execution and the claimants, was had at March term, 1828, when a verdict was found for the claimants.

By a bill of exceptions taken by Brandon, it appears that before the jury he proved his judgment, execution, and levy, and that the slave was in Wyzer's possession. The claimants proved the existence of an older judgment against Wyzer, in favor of one Bullock, and that an execution had issued under it, which was produced with the following return: "Levied 16th January 1824, on one house and lot, and one negro woman named Joicy.

W. Y. GLOVER. *Sheriff.*"

"Also one negro boy named Jacob, taken as the property of J. Wyzer, at the suit of J. Bullock, and the said boy was sold, the 2d of March, 1824, to Snows and Cunningham. I certify that from the word "Joicy," the other words are added by leave of the Court, this 13th of October 1827. The words "16th January, 1824," are also added by leave of the Court as an amended return.

"W. Y. GLOVER."

The former sheriff Glover, deposed that he did in fact sell the negro at sheriff's sale under this execution to the claimants for $255, which they paid him, and that he delivered him to them, and gave them a bill of sale. The bill of sale was not produced, nor was it recorded, but its loss and contents were proved. It was further proved that in a short time after the sale by the sheriff, the slave went into the possession of Wyzer, and remained in his possession two or three months, without any stipulation for loan or hire, express or implied; that after that period the claimants hired the slave to Wyzer at $20 per year, and that this was a reasonable rate of hire; that the claimants had regularly paid the taxes for him; it was also proved that Wyzer was indebted to the claimants at the time of the sale, in a small amount. There was no proof produced of any notice or advertisement of the sale, nor that ten days notice was given, or any other time, nor was the place of sale proved. On this proof the counsel for the plaintiff in execution requested the Court to instruct the jury;

1. That it was necessary the claimants should prove that legal notice of the time and place of sale had been given according to statute; and that the sale had taken place at the appointed time and place, and in the manner required by the statute.

2. That the right of Brandon could not be prejudiced or affected by the amended return of the former sheriff,

on Bullock's execution, when those rights had accrued anterior to the making of the amendment.

3. That the slave going into the possession of Wyzer, a short time after the sale, and remaining there two or three months without any stipulation of loan or hire, when the relation of debtor and creditor existed between them, rendered the transaction fraudulent.

The first instruction the Court refused, and instructed the jury that they were bound to presume that the sheriff had done his duty, and that all the requirements of the law had been observed by him, unless the contrary was shewn by the opposite party. The second instruction was also refused; and the Court charged the jury that the sheriff's amendment had a retrospective effect, and related back to the original return, and had the same effect on the rights of all parties, as if the amendment formed a part of the original return. The Court also refused to give the third instruction requested.

The charge given by the Court to the jury was also excepted to on account of its form, and the language employed; these expressions having been used, "If you believe the evidence introduced by the claimants, then is the case made out for them."

Brandon, the appellant, assigns in this Court for error, the decisions made as above stated.

BARTON and STEWART, for the appellant.

CRABB and P. N. WILSON, for the appellees.

By LIPSCOMB, CHIEF JUSTICE. The plaintiff in error supposes the Circuit Judge to have erred in refusing the instruction first prayed for, and in giving the instruction he did in relation thereto. In some cases it has been holden, that when land has been sold under execution, the advertisement required by statute must be proven, and that it is an essential muniment of title to the purchaser; but this rule has never been applied to personal property; no paper evidence is necessary for the conveyance of personal property; title to real property is always supposed to be sustained by documentary evidence: perhaps this distinction sufficiently shews the reason of requiring proof that real property had been advertised, while it is not required of personal property. We think then that the charge of the Judge was right.

33

We do not however decide that such proof would be absolutely necessary, even in the case of a sale of land.

The second error assigned is, that the Court charged the jury, that the amended return made by the sheriff at the trial, on the execution under which the defendants purchased, related to the time when the original return was made. If the sheriff had sold the slave levied on and neglected to make the return on the execution required by statute, such neglect surely could not operate prejudicially to the purchaser; and the sheriff, as a ministerial officer, would be so far protected, as to be permitted to amend his return so as to make it true, at any time.

The third error assigned is in relation to the possession of the property remaining with Wyzer. We believe that there was no error in refusing to give the charge prayed. There had been a great contrariety of decision on the question, whether the property remaining with the vendor after an absolute sale was fraudulent *per se*, or only a badge of fraud; but under the most rigid construction, a purchase made at sheriff's sale was an exception to the rule of the possession being fraud *per se;* and the law is now settled, that in no case, does the mere fact of possession remaining with the vendor constitute fraud, but that it is only a badge of fraud, from which the jury must draw the inference of its existence, if not rebutted or explained.

Exceptions were taken to the terms used by the Judge in his charge to the jury, such as "if they believed the evidence offered by the claimants of the property, then is their case made out." It would be impossible for this Court to say whether there was error in this charge or not, unless we were informed what testimony had been introduced by the claimants. If the record does not shew enough to satisfy this Court that the charge was erroneous, we cannot presume such error. It is certainly competent for the Judge to sum up the testimony, and nothing can be fairer, or more in the sphere of his duty, than for him to tell the jury, that if they found such facts proven, that the law was in favor or against a party plaintiff or defendant. We believe there is no error error, and that the judgment must be affirmed.

JUDGES CRENSHAW and COLLIER not sitting; the former having presided below, and the latter having been of counsel in the cause.